UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ANDREW GODDARD,<br>　　　　PLAINTIFF<br><br>v.<br><br>WILLIAM J. KELLEY, DANIEL HUMPHREYS,<br>THOMAS MANNING, in their individual<br>capacities; and the CITY OF BOSTON,<br>　　　　DEFENDANTS | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. |

## COMPLAINT

### INTRODUCTION

1. This is an action for compensation as a result of injuries to Andrew Goddard when he was unlawfully arrested and subjected to unreasonable force during game five of the American League Championship Series ("ALCS") in 2004 between the Red Sox and Yankees. On October 19, 2004, Andrew Goddard ("Andrew") and his brother Matthew Goddard ("Matthew") were at Fenway Park to watch the game. Boston police officers William Kelley ("Officer Kelley") and Daniel Humphreys ("Officer Humphreys") ejected Andrew and Matthew after they, along with many other Red Sox fans in the park, voiced frustration at an incorrect call by an umpire on a crucial two-out play in the 12th inning. On their way out, Officer Humphreys shoved Andrew repeatedly, despite the fact that Andrew told him he had a knee injury. While they were near an exit, Matthew tried to learn officer Kelley's badge number. Officer Kelley shouted at Matthew. Andrew took a few steps towards the exit, at which point Officer Kelley punched Andrew in the throat. Andrew stumbled backwards and fell to the ground. Sergeant Thomas Manning ("Sgt. Manning") yelled profanities at Andrew as

he lay on the ground, and then he ordered Andrew's arrest. Officers Kelley and Humphreys dropped their full weight onto Andrew's knees and back to cuff him. Andrew was found not guilty of all charges after a jury trial. The defendants violated Andrew's constitutional rights and committed torts under Massachusetts law.

**JURISDICTION**

2.    This action is brought pursuant to 42 U.S.C. §§1983 and 1988, and the Fourth Amendment to the United States Constitution. Title 28 U.S.C. §§1331 and 1343 provide federal question jurisdiction, and 28 U.S.C. § 1367 provides supplemental jurisdiction over the state law claims.

**PARTIES**

3.    Plaintiff Andrew Goddard was at all times material to this complaint a resident of the Commonwealth of Massachusetts. Andrew was twenty-four years old on October 19, 2004.

4.    Defendant William J. Kelley was at all times material to this complaint a duly appointed police officer in the Anti-Crime Unit of the Boston Police. His actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

5.    Defendant Daniel Humphreys was at all times material to this complaint a duly appointed police officer of the Boston Police. His actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

6.    Defendant Thomas Manning was at all times material to this complaint a duly appointed police officer and shift supervisor of the Boston Police. His actions alleged in this

complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

7. Defendant City of Boston is a municipal corporation located in Suffolk County, Commonwealth of Massachusetts, and was at all times relevant to this complaint, the public employer of defendants Kelley, Humphreys, and Manning.

**FACTS**

8. On October 19, 2004, Andrew Goddard and his brother Matthew Goddard were attending game five of the ALCS at Fenway Park.

9. The game was sold out. The crowd was excited because the home team Boston Red Sox faced elimination from the playoffs by the New York Yankees. The Yankees led the seven game series three games to one.

10. The game was closely contested and it stretched into extra innings. With two outs in the bottom of the 12th inning, David Ortiz of the Red Sox drew a walk. After reaching first, Ortiz tried to steal second base, but was called out on a close play.

11. Andrew could see that Ortiz was safe. He and his brother immediately jumped out of their seats, along with thousands of other members of the crowd, to protest the call. While standing, Andrew swore at the umpire and extended his middle finger towards him. After expressing his frustration, Andrew sat back down to watch the game.

12. An instant replay confirmed that the umpire on the field indeed had made an error; Ortiz's hand had reached the base before Yankee shortstop Derek Jeter applied a tag.

13. Shortly after the umpire's mistake, officers Kelley and Humphreys approached Andrew and Matthew.

14. Officer Humphreys and Officer Kelley addressed Andrew, but due to crowd noise, he could not hear them. From his prior experiences at sporting events, Andrew assumed the officers were issuing a warning about swearing, so he apologized and resumed watching the game.

15. One of the officers told Andrew, "you're leaving or you're going to be arrested."

16. Andrew and Matthew left their seats voluntarily. As they made their way to the aisle, Officer Kelley grabbed Andrew by the shirt and shoved him forward.

17. Andrew and Matthew began to ascend the stairs towards the concourse, escorted by officers Kelley and Humphreys.

18. In February and May of 2004, Andrew underwent reconstructive surgery on his right knee to repair a torn anterior cruciate ligament (ACL) and bone fracture.

19. Andrew moved slowly due to his knee injury. He informed Officer Humphreys of his condition several times. Despite this, Officer Humphreys shoved Andrew from behind, multiple times, in an attempt to accelerate his pace as they climbed the steps.

20. After reaching the entrance to the concourse, an unidentified officer and Officer Humphreys grabbed Andrew by either arm and dragged him towards a garage door exit to Van Ness Street. Again, Andrew told the officers that he was already "walking as fast as" he could.

21. At the door, Officer Humphreys and the unidentified officer released their grip on Andrew and he walked out of the stadium onto Van Ness Street.

22. Before Andrew and Matthew could leave, one of the officers informed them that the Red Sox official needed to see their I.D. Andrew produced his driver's license and gave it to the official.

23. While Andrew waited for his information to be written down, Officer Kelley

suddenly yelled at Matthew, "What are you looking at?"

24. Matthew responded, "I'm looking at your badge."

25. Officer Kelley then screamed at Matthew, "What are you going to do about it? What are you going to do? My badge number is 1330."

26. Next, Officer Kelley poked Matthew in the chest, swore, and asked him, "What do you got? You want to hit me? Come on, hit me."

27. As Officer Kelley shouted at Matthew, Andrew attempted to walk out of the park.

28. After he took only two steps, Officer Kelley punched Andrew in the throat with a closed fist.

29. Andrew suddenly could not breathe. He stumbled backwards into a parked ambulance, and then he fell to the ground.

30. Officer Kelley yelled at Andrew, "Where do you think you're going?" as Andrew slumped downwards.

31. At this point, Sgt. Manning responded to the scene after hearing "yelling and screaming."

32. When Sgt. Manning arrived, Andrew was on the ground asking to speak to a supervisor and telling those around him that he was injured.

33. Manning spoke briefly with Kelley "to [be] apprise[d]" of the situation, and then approached Andrew, "in [his] capacity as a police supervisor," to speak with him.

34. On information and belief, Sgt. Manning yelled obscenities at Andrew while he lay on the ground and told him, "Get up. What do you think you're doing? You don't get up we're going to arrest you for trespassing."

5

35. Immediately after addressing Andrew, Sgt. Manning directed one of the officers to handcuff Andrew and place him under arrest.

36. A few seconds after Sgt. Manning's order, officers Kelley and Humphreys jumped on top of Andrew's knees and back, and forcefully applied handcuffs, even though Andrew was not resisting.

37. After Andrew was cuffed, Officer Kelley approached Matthew, pushed him against the wall face first, handcuffed him, and then threw him to the ground.

38. A few minutes after Andrew and Matthew's arrest, Sgt. Manning called for a transport van.

39. Andrew and Matthew were placed inside the van, driven to the station, and booked.

40. Andrew and Matthew were charged with trespassing, assault and battery on a police officer, resisting arrest, disorderly conduct, and disturbing a public assembly.

41. Andrew and Matthew were acquitted of all charges after a jury trial on February, 22, 2006.

42. As a direct and proximate cause of the defendants' actions, Andrew suffered the following damages:

   (a) Andrew endured physical pain and suffering as a result of the assault from Officer Kelley and the forceful handcuffing from officers Kelley and Humphreys. There was significant bruising and it was difficult for him to eat or swallow for approximately two and a half weeks after the incident. The pre-existing knee injury was further aggravated.

(b) Andrew endured emotional pain and suffering. He was embarrassed publicly and in front of his brother, Matthew. Additionally, he withstood great anxiety and stress in the defense of baseless criminal charges.

(c) Andrew had to expend time and funds to defend himself from these frivolous accusations.

**COUNT I**  **42 U.S.C. § 1983 4th Amendment Claim Against Officer Kelley and Officer Humphreys for the Unreasonable Use of Force**

43. The above paragraphs are incorporated by reference.

44. Officers Kelley and Humphreys used unreasonable force against Andrew.

45. By the actions described above, officers Kelley and Humphreys deprived the plaintiff of the clearly established and well-settled right to be free from the unreasonable use of force.

46. The defendants' actions were taken with reckless disregard for plaintiff's constitutional rights.

47. As a direct and proximate result of this conduct, the plaintiff suffered the injuries as described above.

**COUNT II**  **42 U.S.C. § 1983 4th Amendment Claim Against Officer Kelley, Officer Humphreys and Sgt. Manning for Unlawful Arrest**

48. The above paragraphs are incorporated by reference.

49. Officer Kelley, Officer Humphreys, and Sgt. Manning did not have probable cause to arrest Andrew.

50. By the actions described above, the defendants deprived the plaintiff of the clearly established and well-settled right to be free from unreasonable seizures.

51. The defendants' actions were taken with reckless disregard for plaintiff's

constitutional rights.

52. As a direct and proximate result of this conduct, the plaintiff suffered the injuries as described above.

**COUNT III    Massachusetts Civil Rights Act, M.G.L. C.12, §11I, Against Officer Kelley, Officer Humphreys and Sgt. Manning**

53. The above paragraphs are incorporated by reference.

54. Officer Kelley, Officer Humphreys, and Sgt. Manning violated the plaintiff's rights by threats, intimidation and coercion.

55. As a direct and proximate result of this conduct, the plaintiff suffered the injuries as described above.

**COUNT IV    Tort of Assault & Battery Against Officers Kelley and Humphreys**

56. The above paragraphs are incorporated by reference.

57. Officers Kelley and Humphreys committed the common law tort of assault and battery against the plaintiff.

58. As a direct and proximate result of this conduct, the plaintiff suffered the injuries as described above.

**COUNT V    False Imprisonment Against Sgt. Manning, Officer Kelley and Officer Humphreys.**

59. The above paragraphs are incorporated by reference.

60. Sgt. Manning, Officer Kelley, and Officer Humphreys committed the common law tort of false imprisonment by physically arresting Andrew without probable cause.

61. As a direct and proximate result of this conduct, the plaintiff suffered the injuries as described above.

**COUNT VI    Malicious Prosecution Against Officer Kelley, Officer Humphreys and Sgt. Manning**

62.   The above paragraphs are incorporated by reference.

63.   The defendants Kelley, Humphreys and Manning commenced or caused to be commenced a criminal prosecution against Mr. Powell, acting with malice and without probable cause.

64.   The criminal action terminated in Mr. Goddard's favor on February, 22, 2006, when a jury found that he was not guilty of all the charges brought against him.

65.   As a direct and proximate result of this conduct, the plaintiff suffered the injuries as described above.

**COUNT VII   Negligence Against the City of Boston**

66.   The above paragraphs are incorporated by reference.

67.   On September 7, 2006, a notice pursuant to M.G.L. c.258, §4 was forwarded to the Mayor of the City of Boston.

68.   Plaintiff properly performed the conditions precedent to filing an action under M.G.L. c. 258.

69.   The City of Boston failed to make a settlement offer in response to plaintiff's demand.

70.   Officer Kelley, Officer Humphreys, and Sgt. Manning were acting within the scope of their employment at all times alleged in this complaint.

71.   Employees of the City of Boston were negligent in:

   (a)   failing to respond properly to a crowd control issue;

   (b)   using profanity and threats to intimidate Andrew;

   (c)   punching Andrew in the throat despite training to avoid such blows;

      (d)      jumping on top of Andrew to handcuff him, even though he was injured and not resisting;

      (e)      arresting Andrew without probable cause;

      (f)      failing to protect Andrew from the unreasonable use of force by Officer Kelley and Officer Humphreys;

      (g)      failing to properly train Officer Kelley, Officer Humphreys, and Sgt. Manning in crowd control, the use of force, and probable cause for arrests;

      (h)      failing to properly supervise Boston police officers including Officer Kelley, Officer Humphreys, and Sgt. Manning; and

      (i)      failing to properly discipline Boston police officers including Officer Kelley, Officer Humphreys, and Sgt. Manning thereby permitting and encouraging acts of misconduct against civilians.

72. As a proximate cause of the City's negligence, the plaintiff suffered damages as described above.

**WHEREFORE**, the plaintiff requests that this court:

1. Award compensatory damages;

2. Award punitive damages against Officer Kelley, Officer Humphreys, and Sgt. Manning;

3. Award the costs of this action, including reasonable attorney's fees; and

4. Award such other and further relief as this Court may deem necessary and appropriate.

**JURY DEMAND**

A jury trial is hereby demanded.

RESPECTFULLY SUBMITTED,

/s/ Howard Friedman
Howard Friedman
BBO# 180080
Jennifer Bills
BBO# 652223
**Law Offices of Howard Friedman, P.C.**
90 Canal Street, Fifth Floor
Boston, MA 02114-2022
(617) 742-4100

Date: April 12, 2007